IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| EAGLE VALLEY CLEAN ENERGY, LLC | ) Case No. 24-11903-MER |
| | ) Chapter 7 |
| *Debtor.* | ) |
| | ) |

**MOTION FOR RELIEF FROM AUTOMATIC STAY TO TERMINATE
OPERATIONS AND MAINTENANCE SERVICES AGREEMENT**

PIC Group, Inc. ("*PIC*"), by and through its undersigned counsel, hereby files this Motion for Relief from Automatic Stay to Terminate Operations and Maintenance Services Agreement (the "*Motion*") pursuant to 11 U.S.C. § 362(d)(1). Cause exists to lift the stay because among other things, Eagle Valley Clean Energy, LLC ("*Debtor*") has filed for Chapter 7 bankruptcy protection and is no longer operating and as a result, lacks the ability to continue to perform under the terms of the contract between Debtor and PIC.

## I. JURISDICTION AND BACKGROUND

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

3. The Debtor and PIC are parties to an Operations and Maintenance Services Agreement dated March 17, 2021 (the "*Agreement*") pursuant to which PIC provided certain operation and maintenance services to operate the Facility. A true and correct copy of the Agreement is available upon request. The Agreement expires on June 1st, 2024, with an option to extend for an additional 2 years. Debtor listed the Agreement as an executory contract on Exhibit G.

4. Debtor owns and before filing for Chapter 7 bankruptcy operated a biomass power plant located in Gypsum, Colorado (the "*Facility*"). Debtor generated electricity from combustion of waste wood. Debtor then sold the generated energy to Holy Cross Energy.

5. Pursuant to the Agreement, PIC provided certain operation and maintenance services for Debtor at the Facility.

6. Pursuant to the Agreement, Debtor was required to, among other things, maintain all Permits from the governmental authorities to run the Facility and pay for all fuel related costs

and expenses, chemicals, consumables and utilities required to operate the Facility and all costs and expenses in connection with the transporting or disposing of hazardous materials to or from the Facility (the "*Debtor Direct Costs*"). In addition, Debtor was required to maintain the following insurance coverage on the terms set forth in more detail in the Agreement: (a) workers compensation and employer liability for Debtor's employees; (b) comprehensive general liability insurance; (c) automobile liability insurance; (d) property and equipment insurance; and (d) pollution liability insurance. Debtor is also required under the Agreement to defend, protect, indemnify and hold harmless PIC and its parent, subsidiaries, affiliates, subcontractors and its and their members, managers, directors, officers, agents, shareholders, employees, partners, representatives, successors and assigns (collectively, the "*PIC Indemnitees*") from any and all liabilities, damages, claims, demands, judgments, losses, costs, expenses, suits, actions or proceedings (including reasonable fees and disbursements of counsel): (1) for bodily injury to or death of third parties or damage to or destruction of third-party property, to the extent caused (i) Debtor's breach of the Agreement, (ii) violations of Permits, any additional permits related to the Facility, or applicable law, or (iii) by any negligent act or omission, gross negligence, willful misconduct, known and intentional fraud, or strict liability on the part of Debtor its lenders and affiliates and its and their directors, managers, members, officers, agents, employees, partners, shareholders, representatives, successors and assigns (collectively, the "*Debtor Parties*") or (2) associated with or arising from the presence, release, storage, generation or disposable of any hazardous material, except to the extent such liability is caused directly by the negligence, gross negligence, or willful misconduct of PIC while performing its duties under the Agreement.

7. Debtor has ceased operating the Facility. Based on Debtor's schedules, the Rural Utilities Service Department of Agriculture ("*Department of Ag*") has a blanket lien on substantially all of the Debtor's assets, including the Facility, accounts receivable and the biomass fuel. Debtor scheduled the amount of the Department of Ag's lien at more than $35,000,000 and the value of the Department of Ag's collateral at only approximately $7,500,000. Based on the Debtor's Chapter 7 bankruptcy filed and because the secured claim by the Department of Ag encumbers substantially all of Debtor's assets, Debtor does not have the ability to operate the Facility, and without consent from the Department of Ag to use cash collateral, the Debtor does not have the ability to pay for PIC's services under the Agreement or the Debtor's Direct Costs which are required for PIC to perform its services under the Agreement, or to defend, protect, indemnify or hold PIC Indemnitees harmless from liabilities as required under the Agreement, including without limitation all liabilities associated with or arising from the presence, release, storage, generation or disposal of any hazardous material. Therefore, PIC requests relief from stay to terminate the Agreement and to excuse any further performance by PIC under the Agreement.

8. There is wood biomass fuel at the Facility that may present a fire hazard under certain conditions. The immediate hazard was related to the wood biomass fuel that was in the silos used to feed the fuel into the Facility. PIC has removed all of the wood biomass fuel from the silos and relocated the wood biomass fuel to normal storage piles at the Facility. While the immediate hazard has now been eliminated, PIC believes the wood waste will need to be turned every couple weeks to lessen the risk of spontaneous combustion with the piles.

9. Debtor listed PIC as a creditor on Schedule F with an unsecured claim in the amount of $178,764.88.

10. A Declaration of Michael Cox in Support of Motion for Relief From Automatic Stay to Terminate Operations and Maintenance Services Agreement is attached hereto as **Exhibit 1**.

### III. BASIS FOR RELIEF AND RELIEF REQUESTED

11. Under 11 U.S.C. § 362(d)(1), the Court may grant relief from stay for "cause". The Bankruptcy Code does not define "cause." Because "there is no clear definition of what constitutes 'cause' discretionary relief from the stay must be determined on a case-by-case basis." *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir. 1987) (internal quotation and citations omitted). *See also In re Jim's Maint. & Sons Inc.*, 418 Fed. Appx. 726, 728 (10th Cir. 2011) (citing *In re Busch*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2033) (same).

12. Cause exists in this case to lift the stay. Pursuant to the Agreement, PIC may terminate the Agreement in the event of insolvency of the Debtor. Debtor has filed for Chapter 7 bankruptcy protection and has ceased operating. Therefore, PIC is unable to perform under the Agreement and PIC should be authorized to terminate the Agreement effective immediately after entry of the order granting relief from stay.

13. The bankruptcy estate has insufficient unencumbered funds to pay for PIC's services under the Agreement.

14. The Department of Ag has a blanket lien on substantially all of Debtor's assets and absent consent by the Department of Ag to use cash collateral, the estate has no ability to pay for PIC's services under the Agreement.

15. The Debtor has not maintained the proper insurance required under the Agreement. The property insurance does not contain an endorsement to include a waiver of subrogation in favor of PIC as required by Section 12.02(b)(iv) of the Agreement. Further, PIC has not been provided proof of pollution liability insurance as required by Section 12.02(b)(v) of the Agreement. Because of the nature of Debtor's work, complying with the insurance requirements was a material obligation by Debtor under the Agreement.

16. The estate has no ability to defend, protect, indemnify or hold PIC Indemnitees harmless from liabilities as required under the Agreement, including without limitation all liabilities associated with or arising from the presence, release, storage, generation or disposal of any hazardous material.

17. Debtor scheduled the Department of Ag's debt in excess of $35,000,000. Total assets are listed at approximately $7.5 million. The Department of Ag is undersecured and there appears to be no equity in the assets for the benefit of the estate. Therefore, granting relief from stay will not prejudice the Debtor.

18.  PIC will be significantly prejudiced if relief from stay is not granted to allow PIC to terminate the Agreement immediately after entry of an order granting relief from stay and excuse any further performance by PIC under the Agreement.  Debtor is not operating or generating revenue and Trustee lacks access to unencumbered funds to pay for PIC services or PIC's employees.  Debtor no longer needs the services that were provided by PIC to Operate the Facility and therefore, it will benefit the estate to allow for termination of the Agreement.

19.  To prevent any further prejudice to PIC, PIC requests that the Court waive the 14-day stay provided in Fed. R. Bankr. P. 4001(a)(3).

WHEREFORE, PIC respectfully requests that this Court enter an order (i) granting PIC relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to terminate the Agreement effective immediately after entry of an order granting relief from stay, (ii) waiving the 14-day stay of such order under Fed. R. Bankr. P. 4001(a)(3), and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  April 29, 2024.                    Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON | PALMER LLC**

*/s/ Joli A. Lofstedt*
Joli A. Lofstedt, Esq. #21946
Gabrielle G. Palmer, Esq. #48948
600 17th Street, Suite 425 North
Denver, CO  80202
Tel. (720) 457-7064
joli@ofjlaw.com
gpalmer@OFJlaw.com

*Counsel for PIC Group, Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 29, 2024, I served a complete copy of **MOTION FOR RELIEF FROM AUTOMATIC STAY TO TERMINATE OPERATIONS AND MAINTENANCE SERVICES AGREEMENT** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

Sarah J. Baker via CM/ECF
Peter A. Cal via CM/ECF
Michael Schuster via CM/ECF
U.S. Trustee via CM/ECF

Eagle Valley Clean Energy LLC
230 Park Ave Ste 1560
New York NY 10169

USDA Rural Development
Attn: Hon. Andrew Berke
STOP 1510 RM 4121-S
1400 Independence Ave. SW
Washington DC 20250-1510

Jared Walters
PO Box 804
Eagle CO 81631

/s/ Barbara A. Moss

5

EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>EAGLE VALLEY CLEAN ENERGY, LLC<br><br>*Debtor.* | )<br>)<br>) Case No. 24-11903-Mer<br>) Chapter 7<br>)<br>) |

### DECLARATION OF MICHAEL COX IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY TO TERMINATE OPERATIONS AND MAINTENANCE SERVICES AGREEMENT

I, Michael Cox, declare as follows:

1. I am over the age of eighteen (18).

2. I am employed by PIC Group, Inc. ("*PIC*") as Vice President – Global Operations.

3. I make this Declaration in support of the Motion for Relief from Automatic Stay to Terminate Operations and Maintenance Services Agreement entered into by Eagle Valley Clean Energy, LLC ("*Debtor*") and PIC on May 17, 2021 (the "*Agreement*").

4. In my capacity as Vice President – Global Operations, I have personal knowledge of the operations of the biomass power plant located in Gypsum, Colorado owned by the Debtor (the "*Facility*").

5. Pursuant to the Agreement, PIC provided certain operation and maintenance services for Debtor at the Facility.

6. Pursuant to the Agreement, Debtor was required to, among other things, maintain all permits from the governmental authorities to operate a biomass power plant, pay for all fuel related costs and expenses, chemicals, consumables and utilities required to operate the Facility and all costs and expenses in connection with the transporting or disposing of hazardous materials to or from the Facility (the "*Debtor Direct Costs*"). In addition, Debtor was required to maintain the following insurance coverage on the terms set forth in more detail in the Agreement: (a) workers compensation and employer liability for Debtor's employees; (b) comprehensive general liability insurance; (c) automobile liability insurance; (d) property and equipment insurance; and (d) pollution liability insurance. Debtor is also required to defend, protect, indemnify and hold harmless PIC and its parent, subsidiaries, affiliates, subcontractors and its and their members, managers, directors, officers, agents, shareholders, employees, partners, representatives, successors and assigns (collectively, the "*PIC Indemnitees*") from any and all liabilities, damages, claims, demands, judgments, losses, costs, expenses, suits, actions or proceedings (including reasonable fees and disbursements of counsel): (1) for bodily injury to or death of third parties or damage to or destruction of third-party property, to the extent caused (i) Debtor's breach of the

Agreement, (ii) violations of permits, any additional permits related to the Facility, or applicable law, or (iii) by any negligent act or omission, gross negligence, willful misconduct, known and intentional fraud, or strict liability on the part of Debtor its lenders and affiliates and its and their directors, managers, members, officers, agents, employees, partners, shareholders, representatives, successors and assigns or (2) associated with or arising from the presence, release, storage, generation or disposable of any hazardous material, except to the extent such liability is caused directly by the negligence, gross negligence, or willful misconduct of PIC while performing its duties under the Agreement.

7. Debtor has ceased operating the Facility.

8. There is wood biomass fuel at the Facility that may present a fire hazard under certain conditions. The immediate hazard was related to the wood biomass fuel that was in the silos used to feed the fuel into the Facility. PIC has removed all of the wood biomass fuel from the silos and relocated the wood biomass fuel to normal storage piles at the Facility. While the immediate hazard has now been eliminated, PIC believes the wood waste will need to be turned every couple weeks to lessen the risk of spontaneous combustion with the piles.

9. PIC will be significantly prejudiced if relief from stay is not granted to allow PIC to terminate the Agreement immediately after entry of the order for relief from stay and excuse any further performance by PIC under the Agreement. Debtor is not operating the Facility and has no ability to pay for PIC services or PIC's employees, pay the Debtor's Direct Costs which are required for PIC to perform its services under the Agreement, or defend, protect, indemnify or hold PIC Indemnitees harmless from liabilities as required under the Agreement, including without limitation all liabilities associated with or arising from the presence, release, storage, generation or disposal of any hazardous material.. Debtor no longer needs the services required in the Agreement and therefore, it will benefit the estate to allow for termination of the Agreement.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of April, 2024.

_____
Michael Cox